UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>ALPHA PETER SEAKOR,<br><br>Defendant. | 4:24-CR-40097-RAL<br><br><br>OPINION AND ORDER ADOPTING<br>REPORT AND RECOMMENDATION |

Defendant Alpha Peter Seakor moved to suppress certain evidence seized by the United States. Doc. 40. Magistrate Judge Veronica L. Duffy conducted an evidentiary hearing and then recommended granting in part and denying in part Seakor's Motion to Suppress. Doc. 50. Seakor now objects to that recommendation. Doc. 54. This Court overrules Seakor's Objection to the Report and Recommendation for the reasons explained.

This Court reviews a report and recommendation under the statutory standards found in 28 U.S.C. § 636(b)(1), which provides in relevant part that "[a] judge of the [district] court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." However, "[i]n the absence of an objection, the district court is not required 'to give any more consideration to the magistrate's report than the court considers appropriate.'" United States v. Murillo-Figueroa, 862 F. Supp. 2d 863, 866 (N.D. Iowa 2012) (quoting Thomas v. Arn, 474 U.S. 140, 150 (1985)). Having reviewed de novo those

1

portions of the report and recommendation to which Seakor objects,[1] this Court adopts the Report and Recommendation.

## I.  Facts

On January 5, 2024, Sioux Falls Police Officer Nicholas Ashley was on patrol working the overnight shift in the northwest quadrant of Sioux Falls, South Dakota. Doc. 51 at 8. At approximately 2:16 a.m., Officer Ashley heard over the police radio that a stolen vehicle had been found near the intersection of Ninth Street and Holly Avenue, which is located in the northwest quadrant of Sioux Falls. Id. at 8–10. That vehicle was reported as having a window smashed out, a blanket or piece of cardboard covering the window, and an open steering column. Id. at 9. The vehicle reportedly had been abandoned on the side of the road. Id. at 8.

Roughly thirty-five minutes after the report of the found stolen vehicle, at approximately 2:50 a.m., Officer Ashley was traveling southbound on North Kiwanis Avenue. Id. at 10. Officer Ashley observed a small silver Nissan hatchback abutting Kiwanis Avenue in the entrance to an apartment complex with its headlights on, which appeared to be poised to turn onto Kiwanis Avenue. Id. Although there was no oncoming traffic from either direction, the car did not enter Kiwanis Avenue and remained stationary. Id. at 10–11. Officer Ashley observed that, although not smashed out, a small window on the driver's side of the car appeared to be covered with some kind of cloth.[2] Id. at 11, 25. Officer Ashley drove by the Nissan and continued to observe it in his rearview mirror as he traveled southbound on Kiwanis Avenue. Id. at 11. The Nissan did not

---

[1] Seakor has only made factual and legal objections to the Report and Recommendation's conclusions regarding the validity of the traffic stop, not the digital evidence. See Doc. 54 at 8.
[2] Seakor objects to the omission of Officer Ashley's testimony that he did not see a broken window on the Nissan. Doc. 54 at 2.

immediately pull onto Kiwanis Avenue after Officer Ashley drove by it. Id. Officer Ashley traveled several blocks before the Nissan turned onto Kiwanis Avenue traveling northbound. Id.

Officer Ashley's suspicions were aroused. He found it significant that the Nissan with the cloth covering a window appeared similar to the stolen vehicle, even though that stolen vehicle had been reported as being found abandoned thirty-five minutes prior. Id. at 12. The Nissan was observed near where the stolen vehicle had been reported found.[3] Id. Officer Ashley also found it odd that the Nissan sat stationary poised to turn onto Kiwanis Avenue without anything preventing a turn for an extended period of time but did not start to turn until the patrol vehicle was several blocks past the Nissan. Id. at 10–11.

Officer Ashley turned around and began following the Nissan in his patrol vehicle. Id. at 12. The Nissan turned right onto Russell Street and began traveling eastbound in the far righthand lane. Id. at 12–13. Officer Ashley testified that he saw the right tires of the Nissan cross the solid fog line[4] on the right side of the lane of travel.[5] Id. at 13; see also Ex. 1 at 00:27. Officer Ashley testified that he then saw the Nissan's left tires cross the dotted lane-dividing line on the lefthand side of the travel lane seconds later.[6] Id. at 13–14; see also Ex. 1 at 00:33. Officer Ashley manually

---

[3] Officer Ashley initially testified that the stolen vehicle was found in the same large, shared parking lot he observed the Nissan in. Doc. 51 at 12. Officer Ashley later testified that the stolen vehicle had been abandoned on the side of the road, not in the parking lot. Id. at 22. Seakor objects and notes that the parking lot from which the Nissan was emerging is unconnected to the apartment complex parking lot near where the stolen vehicle was found. Doc. 54 at 5 (citing Ex. A). Regardless, the stolen vehicle was located within a couple blocks of where Officer Ashley observed the Nissan. See Ex. A.

[4] A "fog line" is a solid white line painted on the right edge of a road that serves as a guide for drivers, especially in low-visibility conditions like fog.

[5] Seakor objects to the factual finding that the Nissan's tires appear to cross the fog line. Doc. 54 at 3. Seakor argues that, at most, they appear to touch the fog line. Id.

[6] Seakor objects to the factual finding that the Nissan's tires touched the dotted lane-dividing line on the lefthand side of the travel lane. Doc. 54 at 4. Magistrate Judge Duffy included in the Report and Recommendation that the Nissan touched the dotted lane-dividing line on the lefthand side a second time. Doc. 50 at 3 (citing Ex. 1 at 00:50). Seakor also objects to this factual finding and

activated his dashboard video camera, believing that he had witnessed a traffic violation, and continued following the Nissan.[7] Id. at 14, 21.

Officer Ashley ran the license plate of the Nissan while following it.[8] Id. at 32. The Nissan had not been reported as stolen. Id. Officer Ashley testified that based on the time, approximately 2:50 a.m., that it was unlikely that the car would have been reported as stolen if the vehicle had just been stolen. Id. at 40. It appears that Officer Ashley thought it possible that someone had ditched the previously stolen vehicle and pilfered the Nissan, possibly by breaking a window to enter it. Id. at 11–12, 31, 40.

Officer Ashley caught up to the Nissan as it was turning right onto Prairie Avenue to travel southbound. Id. at 17. At this point, Officer Ashley activated his patrol vehicle's lights and initiated a traffic stop. Id. at 17. The Nissan began to pull over into the parking area along the curb,[9] and then swerved out and continued forward briefly. Id. at 18; see also Ex. 1 at 1:39. As the Nissan was coming to a stop moments later, a male exited from the front passenger seat of the vehicle, dropped a cellphone from his pocket, and took off running. Doc. 51 at 18; see also Ex. 1 at 1:45. Although Officer Ashley did not pursue the fleeing passenger, other officers did and successfully apprehended the passenger. Id. The passenger was identified as Seakor. Id. at 19.

---

[7] the omission of Officer Ashley's testimony that his dashcam video shows that the Nissan only touches the right and lefthand lines one time each. Doc. 54 at 2 (citing Doc. 51 at 33).

[7] Officer Ashley explained that the dashcam video machines will automatically record thirty seconds of footage before the time they are activated. Doc. 51 at 21. Thus, Exhibit 1 begins as Officer Ashley is turning onto Russell Street rather than at the exact point when he manually activated the dashcam believing he witnessed a traffic violation. Id. at 20–21.

[8] Seakor objects to the omission of Officer Ashley's testimony that he ran the license plate of the Nissan and discovered that it was not stolen. Doc. 54 at 2.

[9] The parking area along the curb on Prairie Avenue at this location is marked off with a solid white line. See Ex. 1 at 1:40. The Nissan pulled over past the solid white line initially before veering back into the travel lane. Id. at 1:43.

While other officers apprehended Seakor, Officer Ashley remained with the Nissan and secured the juvenile driver. Id. at 18. Officer Ashley searched the vehicle and discovered an HK .22 LR rifle, the possession of which Seakor is charged with in the indictment, Doc. 1, in this case. Doc. 51 at 19. Officer Ashley found the rifle lying against the front passenger seat—the area from which Seakor had just fled—with the barrel facing down and loaded with a full magazine. Id. The rifle and cellphone were collected from the scene by officers. Ex. 1 at 9:18, 13:22.

## II.    Factual Objections

Seakor makes six factual objections to the Report and Recommendation. Doc. 54 at 2–5. Seakor objects to the omission of certain testimony from Officer Ashley, Doc. 54 at 2, which this Court has included in its factual recitation and analysis. Seakor also objects to Judge Duffy's factual findings that the car crossed the fog line and touched the lane-dividing line and that Officer Ashley's testimony was credible. Id. at 3–5. This Court addresses these objections below.

## III.   Traffic Stop

A traffic stop is a "seizure" under the Fourth Amendment and must be supported by probable cause or reasonable suspicion. United States v. Gordon, 741 F.3d 872, 876 (8th Cir. 2013). Probable cause for a traffic stop exists "[a]s long as an officer objectively has a reasonable basis for believing that the driver has breached a traffic law." Id. (cleaned up) (quoting United States v. Coney, 456 F.3d 850, 856 (8th Cir. 2006)). This is true even when the traffic violation is minor, and the stop is simply "a pretext for other investigation." United States v. Payne, 534 F.3d 948, 951 (8th Cir. 2008); see also Whren v. United States, 517 U.S. 806, 813 (1996) (explaining that Supreme Court precedent "foreclose[d] any argument that the constitutional reasonableness of traffic stops depends on the actual motivations of the individual officers involved"). Indeed, a traffic stop "is valid even if the police would have ignored the traffic violation but for their

suspicion that greater crimes are afoot." United States v. Long, 532 F.3d 791, 795 (8th Cir. 2008) (quoting United States v. Chatman, 119 F.3d 1335, 1340 (8th Cir. 1997)).

The less-rigorous standard of reasonable suspicion "exists when an officer is aware of particularized, objective facts which, taken together with rational inferences from those facts, reasonably warrant suspicion that a crime is being committed." Gordon, 741 F.3d at 876 (internal marks omitted) (quoting United States v. Hollins, 685 F.3d 703, 706 (8th Cir. 2012)). "In analyzing whether an officer had reasonable suspicion, we look to the totality of the circumstances." United States v. Brown, 60 F.4th 1179, 1182 (8th Cir. 2023) (citing Kansas v. Glover, 589 U.S. 376, 386 (2020)). The Fourth Amendment requires that police officers be reasonable, not perfect. Heien v. North Carolina, 574 U.S. 54, 60–61 (2014). Thus, grounds for a traffic stop may rest on an officer's mistake of fact or law, provided that the mistake is objectively reasonable. Id. at 60–67; Hollins, 685 F.3d at 706.

Officer Ashley testified that he noticed similarities between the Nissan and the reported vehicle including some type of cloth covering one of the windows. The Nissan was within a couple blocks of where the car reported stolen was located roughly thirty-five minutes earlier. Officer Ashley also described the odd behavior of the driver—the Nissan looked poised to turn onto Kiwanis Avenue with its headlights on and the vehicle running but instead remained stationary, despite the absence of anything preventing it from proceeding, until after Officer Ashley had passed it and traveled several blocks. Only then did the car turn onto Kiwanis Avenue and begin driving in the opposite direction of Officer Ashley.

Officer Ashley testified, in addition to the suspicion supplied from the similarities to the stolen vehicle and the delayed turn onto Kiwanis until blocks after the patrol car passed, he had a reasonable basis to pull the Nissan over for violating SDCL § 32-26-6 when it crossed the fog line

6

and dotted lane-dividing line. Judge Duffy concluded that Officer Ashley had a reasonable suspicion that the Nissan violated SDCL § 32-26-6 and that the Nissan's driving, along with the facts preceding the traffic violation, created reasonable suspicion that criminal activity was afoot. Doc. 50 at 11.

SDCL § 32-26-6 provides: "On a roadway divided into lanes, a vehicle shall be driven as nearly as practicable entirely within a single lane and may not be moved from such lane until the driver has first ascertained that such movement can be made with safety." The Supreme Court of South Dakota has held that an officer had reasonable suspicion that a defendant violated § 32-26-6 when the officer saw the defendant cross over the fog line "by at least a tire width" and it was practicable for the defendant to remain entirely within his lane. State v. Hett, 834 N.W.2d 317, 323 (S.D. 2013). Similarly, the Eighth Circuit has held that a trooper had probable cause to stop a vehicle for violating § 32-26-6 when the passenger side wheels of the suspect's car crossed the fog line one time. United States v. Herrera Martinez, 354 F.3d 932, 933–34 (8th Cir. 2004) (per curiam), vacated on other grounds, 546 U.S. 1164 (2007). And courts applying statutes very similar to § 32-26-6 have held that officers had an objectively reasonable basis for a stop when a suspect crossed the fog line once for ten to fifteen seconds in good driving conditions, United States v. Herrera-Gonzalez, 474 F.3d 1105, 1110–11 (8th Cir. 2007), when a suspect crossed the fog line once by "about a foot . . . for a few seconds" and there were no factors making it impractical for the suspect to remain in a single lane, United States v. Alvarado, 430 F.3d 1305, 1308–09 (10th Cir. 2005), and when the right wheels of the suspect's car crossed over the fog line once for two seconds and it was practicable for the suspect to remain entirely within his lane, State v. Wolfer, 780 N.W.2d 650, 652–53 (N.D. 2010).

7

Here, Officer Ashley testified that the Nissan crossed the fog line on the righthand side of the travel lane once and then drifted to the left and crossed the dotted lane-dividing line on the lefthand side of the travel lane. Judge Duffy specifically found Officer Ashley's testimony to be credible although Judge Duffy concluded that the Nissan crossed the fog line and only touched the lane-dividing line. Doc. 50 at 11. Seakor objects to the factual conclusion that the Nissan crossed the fog line or lane-dividing line based on the video of the traffic stop, arguing that the video undermines Officer Ashley's testimony and shows that the Nissan never crossed the fog line. Doc. 54 at 2–5. The video is inconclusive in part due to the distance between the Nissan and Officer Ashley's patrol car; it is hard to tell whether the Nissan crossed over the fog line or merely drove on top of it. See Ex. 1 at 00:27–00:35. The video falls short of establishing that the Nissan never crossed over the fog line and therefore does not justify disregarding Judge Duffy's determination that Officer Ashley's testimony was credible. See United States v. Walker, 555 F.3d 716, 720 (8th Cir. 2009) (declining to reverse district court's finding that an officer's testimony was credible where the officer testified that he observed a possible altercation in a car and the video the defendant claimed undermined this testimony was inconclusive). Indeed, the testimony of Officer Ashley that he manually activated his dashcam when he observed the traffic violation squarely aligns with when the dashcam video records the Nissan on or over the fog line and then on the lane-dividing line, roughly thirty seconds into the recording. See Ex. 1 at 00:27–00:33. The video also shows that it was practicable for the Nissan to stay entirely within its lane: the road was dry, smooth, and relatively straight, there were no obstructions in the Nissan's lane, and the lanes were clearly marked. See Ex. 1. Under these circumstances, Officer Ashley had at least a reasonable suspicion that the Nissan violated SDCL § 32-26-6 by crossing the fog line.

8

Seakor objects to Judge Duffy's omission of Officer Ashley's testimony that he did not see a broken window on the Nissan. Doc. 54 at 2. Seakor contends that this is relevant to Officer Ashley's determination that he had reasonable suspicion to pull over the car. Id. This is largely beside the point. Officer Ashley did not stop the Nissan until he observed what he viewed as a traffic violation.

Seakor objects to Judge Duffy's omission of Officer Ashley's testimony that he ran the license plate of the Nissan and learned the vehicle had not been reported stolen. Doc. 54 at 2. Seakor contends that this testimony undermines Officer Ashley's determination that he had reasonable suspicion to pull over the car. Id. Although Officer Ashley ran the license plate and learned it was not stolen, he testified that this did not surprise him because it was unlikely that the vehicle newly stolen would have been reported yet at 2:50 a.m. Indeed, if the driver of the stolen vehicle had abandoned it and found the Nissan blocks away, it is unlikely that the Nissan would have been reported as stolen immediately. This does not alter the analysis of whether Officer Ashley had reasonable suspicion to stop the Nissan. Of course an officer may not use a report of a stolen vehicle found abandoned as a pretense to stop other vehicles in the vicinity of where the vehicle was found. But an officer may stop a vehicle for a lane violation.

This Court agrees with Judge Duffy that the totality of the circumstances gave Officer Ashley reasonable suspicion to stop the vehicle once he saw a traffic violation. Officer Ashley testified and described "particularized, objective facts"—the cloth on the window, proximity of the stolen vehicle, odd behavior of the driver, and traffic violation—"which, taken together with rational inferences from those facts, reasonably warrant suspicion that a crime [was] being committed." Gordon, 741 F.3d at 876 (internal marks omitted) (quoting Hollins, 685 F.3d 703, 706 (8th Cir. 2012)). Officer Ashley's suspicions prompted him to turn his patrol car around and

follow the Nissan. Officer Ashley then observed the Nissan cross the fog line, a traffic violation under SDCL § 32-26-6. The totality of all the circumstances here gave Officer Ashley reasonable suspicion to stop the Nissan.[10]

### IV.    Conclusion

For the reasons stated above, it is hereby

ORDERED that Defendant's Objection to the Report and Recommendation, Doc. 54, is overruled. It is further

ORDERED that the Report and Recommendation, Doc. 50, is adopted. It is finally

ORDERED that Defendant's Motion to Suppress, Doc. 40, is denied.

DATED this 2nd day of January, 2026.

BY THE COURT:

ROBERTO A. LANGE
CHIEF JUDGE

---

[10] Judge Duffy also noted Seakor may not have standing to object to the seizure of the firearm even if he had been the passenger in the vehicle. See Doc. 50 at 11 n.6. Seakor took off running when police initiated the traffic stop, leaving the gun behind in the car. The Eighth Circuit has held that a defendant abandoned property when he fled his companion's car during a traffic stop, thus giving up any Fourth Amendment expectation of privacy he might have had if he had remained in the vehicle during the traffic stop. See United States v. Nowak, 825 F.3d 946, 949 (8th Cir. 2016).